IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNIFER PETKA and BRIAN PETKA,**<br>**Plaintiffs,**<br><br>v.<br><br>**SAMSUNG ELECTRONICS AMERICA,**<br>**INC., et al.,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br><br>NO.  22-2284 |

## MEMORANDUM OPINION

This is a subrogation action by Plaintiffs Jennifer and Brian Petka against Defendants Samsung Electronics America, Inc., Lowe's Home Centers, LLC, and XPO Last Mile, Inc. (collectively, "Defendants").  The Petkas allege that Defendants respectively distributed, sold, and installed a defective clothing dryer that subsequently caught fire, resulting in extensive damage to their home.  Presently pending are Defendants' motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(a).  For the reasons that follow, all three motions will be granted.

### I.   FACTUAL BACKGROUND

Unless otherwise noted, the following facts appear undisputed.  In November 2020, a fire broke out in the basement of Jennifer and Brian Petka's Collegeville, Pennsylvania home.  After investigation, a report by the fire department identified a utility closet which housed the washer and dryer as the fire's point of origin.  The report pointed to "extensive charring" of the surrounding cabinets and concluded that the fire appeared to have spread up through the heating duct that ran along the side of the building.  The report also noted that Jennifer Petka had turned the dryer on shortly before the fire started.  The damage to the home was significant, and the Petka's insurance carrier ultimately paid out over $400,000 in remediation costs.

Over the course of discovery, the parties collectively hired seven different experts to investigate the fire and opine on its origins; all pointed the finger at the liquid propane gas line feeding the dryer.  For example:

- Craig Clauser, a metallurgical engineer hired by the Petkas, observed that the dryer was fed with a rigid steel gas line that had visibly fractured.  He opined that the repeated motion of the dryer had caused a fatigue crack to form in the line, and that gas leaking out of this crack fueled the eventual fire.
- Michael Zazula and Scott Walker, forensic investigators hired by the Petkas, likewise pointed to the gas leaking from the fractured feed line as the source of the fire.  Zazula's report also stated that the use of a rigid feed line (vice a flexible gas appliance connector) "violates the installation recommendation of Samsung and renders the installation of the dryer improper and defective."
- Frank Ferrese, an electrical engineer hired by the Petkas' insurer, ruled out an electrical failure in the appliances, adjacent lighting, or branch circuit wiring, opining that "[t]he ignition of this fire was not a result of a design or manufacturing defect with any of the electrical components or systems associated with any of the observed items."

Based on these reports, the parties all agreed that "There is no dispute that Plaintiffs' claims relate to an allegedly faulty installation, and not a faulty product."

Regarding that installation, Samsung's gas code expert, Terrence Fearon, opined that the use of unsupported rigid gas piping in these circumstances violated multiple code requirements meant to prevent failures in appliance connectors.  He also opined that these rigid connectors violated the installation instructions provided by Samsung, pointing to a provision of the user

2

manual that stated that gas line installation "must conform with local codes," required the use of "[g]as lines (for gas models) that must meet national and local regulations," and directed that installation be performed by a qualified technician. Fearon opined that based on his investigation, "the subject installation violated multiple sections of the 2009/IFGC and the Samsung User Manual."

## II. LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

## III. DISCUSSION

At the outset, Defendants Lowe's and XPO question whether the dryer in the Petkas' Collegeville, Pennsylvania home was the same appliance that they respectively sold and installed.[1]  Specifically, they state that during discovery, Lowe's produced the Petkas' complete purchase history, which showed that in July 2016—when the Petkas lived in Gilbertsville, Pennsylvania—the couple purchased a Samsung dryer with the same model number as the one that later caught fire.  The Petkas did not move to their Collegeville home until the following year, and Lowe's could not locate any records that reflected the purchase of a dryer after that move.  Likewise, XPO produced records showing that in 2016, the company installed a Samsung dryer in the Petka's Gilbertsville home, but which indicated that no additional work took place after the Petkas moved to Collegeville.  Thus, these Defendants argue, because there is no evidence in the record specifically tying them to the dryer that caught fire, the Petka's claims fail as a matter of law.

But with regard to Lowe's, there is in fact evidence tying it to the fire, as both Petkas specifically testified that they purchased a Samsung dryer from the retailer *after* moving into their Collegeville home.  Jennifer Petka, for example, testified at her deposition that shortly after the couple moved to Collegeville, they went to Lowe's and purchased a new washer and dryer to replace the ones that came with the house.  She added that at that time of that purchase, the couple paid several hundred extra dollars to have the appliances installed, and that they did not perform any of the installation work themselves.  Brian Petka testified to the same, and both denied bringing the dryer purchased in 2016 with them when they moved from Gilbertsville to Collegeville.  While this testimony seems to be flatly contradicted by the purchase records

---

[1] Samsung does not dispute that it was one of its dryers that caught fire.

4

produced by Lowe's, that inconsistency merely highlights a credibility issue that cannot be resolved in a motion for summary judgment. *See Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 909 (3d Cir. 1984) ("[C]onflicts of credibility should not be resolved on a hearing on the motion for summary judgment unless the opponent's evidence is 'too incredible to be believed by reasonable minds.'") (quoting 6 Moore's Fed. Prac. ¶ 56.15(4) (2d ed. 1976)). It is not "too incredible" that a reasonable jury might conclude, as the Petkas argue, that the Lowe's records are simply incomplete.

XPO's argument is a different matter. No direct testimony ties the company to the fire, as while the Petkas testified that someone installed their dryer in their Collegeville home, neither could recall the identity of that installer. The summary judgment record contains no documentary evidence either; as discussed, neither Lowe's nor XPO could locate any documents relating to the dryer's sale or installation, and the Petkas were likewise unable to supply any records of their own. Instead, the couple relies entirely on the testimony of Lowe's corporate representative, Seth Finkey, who stated at his deposition that the retailer typically contracts with XPO to perform deliveries and hookups "that do[] not require complex install." For those complex installations, "[t]here's various number of installers that do them, depending on what category and area." But while the Petkas argue that this testimony alone could permit jury to conclude that XPO installed the dryer in their Collegeville home, "speculation, conjecture, and the inferences drawn therefrom will not defeat a motion for summary judgment." *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 194 (3d Cir. 2014). In other words, the Petkas' burden was to adduce evidence showing that XPO actually installed their dryer, not evidence implying that it might have. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must

do more than simply show that there is some metaphysical doubt as to the material facts."). Because they have not met that burden, their claim against XPO will be dismissed.

Turning to the specific causes of action against Samsung and Lowe's, the Petkas advance four theories of liability: (1) strict liability; (2) negligence; (3) breach of warranty; and, (4) breach of contract. The evidence supporting each theory will be evaluated in turn.

### A. Strict Liability

Pennsylvania has adopted Section 402A of the Second Restatement of Torts, which provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property," notwithstanding the fact that "the seller has exercised all possible care in the preparation and sale of his product." *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966) (quoting *Restatement (Second) of Torts* § 402A (1965)).[2] As a result, "those who engage in the business of selling a product are subject to both a duty of care in manufacturing and selling the product and a duty to sell a product free from a 'defective condition,'" and this duty extends to all entities "in the chain of distribution to the ultimate consumer." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 383 (Pa. 2014). "To demonstrate a breach of duty in a strict liability matter, a plaintiff must prove that a seller (manufacturer or distributor) placed on the market a product in a 'defective condition.'" *Id.* at 384. As relevant here, "defective condition," refers to a product that is, "upon normal use, dangerous beyond the reasonable consumer's contemplations," *id.* at 387, or else when "a 'reasonable person' would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Id.* at 389. Additionally, a product is defective "where the

---

[2] All conduct relevant to this lawsuit took place in Pennsylvania, and no party disputes that Pennsylvania law applies.

product was 'distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product.'" *Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1171 (Pa. 1995) (quoting *Mackowick v. Westinghouse Elec.*, 575 A.2d 100, 102 (Pa. 1990)).

Here, Defendants argue that the evidence in the summary judgment record is insufficient to permit a reasonable juror to conclude either that the Petka's dryer was placed on the market in a defective condition or that Defendants failed to adequately warn users of the dangers inherent with the product. They are correct on both points.

### i. *Manufacturing/Design Defect Theory*

As discussed, "the cause of action in strict products liability requires proof, in the alternative, either of the ordinary consumer's expectations or of the risk-utility of a product." *Tincher*, 104 A.3d at 401. Under either standard, the ultimate question is whether the plaintiff can prove that "a seller . . . placed on the market a product *in a defective condition*." *Id.* at 384 (emphasis added). In this case, no evidence supports such a conclusion. To the contrary—all of the experts retained for this matter agreed that the fire resulted from the dryer's faulty installation, and none identified a defect in the appliance itself. The Petkas do not suggest otherwise. In fact, in their response to the Defendants' statements of undisputed fact, the couple agreed that "there is no dispute that Plaintiffs' claims relate to an allegedly faulty installation, and not a faulty product." That dooms their product defect claim: "[t]o recover under § 402A, a plaintiff must establish that the product was defective." *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997).

Attempting to show otherwise, the Petkas argue that the mere fact of the fire established that the dryer was defective under the consumer expectations test, as reasonable consumers do not expect clothes dryers to "spontaneously catch fire" upon normal use. They also contend that

the dryer was defective under the risk-utility test, again pointing to the fire itself as evidence that the risks associated with the appliance out-weighed the costs of making it safer.  But as Pennsylvania's Supreme Court has explained, the consumer expectation and risk-utility tests are just standards "that purport to reflect the competing interests of consumers and sellers, upon which all American jurisdictions judge the adequacy of a product's design." *Tincher*, 104 A.3d at 387.  Here, where the Petkas concede that there is nothing to judge regarding "the adequacy of [the dryer]'s design," their manufacturing/design defect claims fail as a matter of law.

> ii.   ***Failure-to-Warn Theory***

Even if a product is properly designed, it may nonetheless "still be unreasonably dangerous (and therefore 'defective') for strict liability purposes if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the product." *Pavlik v. Lane Ltd./Tobacco Exporters Intern.*, 135 F.3d 876, 881 (3d Cir. 1998) (citing *Webb*, 220 A.2d at 853)).  Proving such a claim requires evidence that "it was the total lack or insufficiency of a warning that was both a cause-in-fact and the proximate cause of the injuries." *Id.*  "To reach a jury on a failure to warn theory of liability, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning might have prevented the injury." *Id.*  "A qualified expert's causation testimony, rendered to a reasonable degree of [] certainty and adequately based in fact, is generally sufficient to make out a *prima facie* case of failure to warn." *T.M. v. Janssen Pharm. Inc.*, 214 A.3d 709, 721 (Pa. Super. 2019).

Here, the Petkas maintain that the user manual for their dryer did not specifically warn against the use of rigid gas lines, and that this omission alone is enough to create a triable issue of fact on their failure-to-warn claim.  In support of this argument, the only evidence they cite to

is the report their expert Michael Zazula, who noted that another manufacturer (GE) does include an explicit warning to use a flexible gas line when installing its dryers.  But while Zazula's report pointed out this difference, he never offered an opinion on its significance.  Moreover, as his report acknowledged, the Samsung manual did instruct that the dryer must be installed by a qualified technician in accordance with local code requirements.  And these codes, as the Samsung's expert Terrence Fearon explained, do not permit the use of a rigid connector in this application.  Zazula's report does not state otherwise.  In fact, he acknowledges that the failure to use a flexible gas line "violates the installation recommendation of Samsung and renders the installation of the dryer improper and defective."  This evidence would not permit a reasonable factfinder to conclude that the "insufficiency of a warning that was both a cause-in-fact and the proximate cause of the injuries." *Pavlik*, 135 F.3d at 881.  Because the Petkas point to no other evidence on this point, nor is any apparent in the summary judgment record, their failure-to-warn claims fail.

### B. Negligence

The Petkas' next claim is for negligence.  "To prevail on a negligence claim, a plaintiff must demonstrate the following: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1126 (Pa. Super. 2004).

Here, the Petka's negligence claims against Samsung and Lowe's closely mirror their strict liability claims—*i.e.*, that these defendants were negligent in the "design, manufacture, assembly, sales, transport, distribution or marketing of the dryer, the preparation of instructions, provision of instructions or training of employees to prepare or provide instructions."  For much

the same reasons, these claims fail as well. First, as discussed above, the Petkas have adduced no evidence showing that the dryer was defective or that its instruction manual was inadequate (and indeed have conceded the former point). Thus, even assuming that Samsung and Lowe's have a duty to safely design, manufacture, and transport the appliances that they sell,[3] the summary judgment record contains no evidence from which a jury could conclude that they breached this duty. Second, while the Petkas also refer to a negligent failure to train employees, neither their Complaint nor their briefing opposing summary judgment offer any explanation of what this duty consisted of or point to any evidence showing that Samsung or Lowe's breached it. Accordingly, these negligence claims will be dismissed.

### C. Breach of Warranty

The Petkas' Complaint alleges that Samsung and Lowe's breached two warranties: (1) the implied warranty of merchantability, *see* 13 Pa. C.S. § 2314(c); and, (2) the implied warranty of fitness for a particular purpose, *see id.* § 2315.[4] The summary judgment record would not permit a jury to find in their favor on either claim.

The implied warranty of merchantability "serve[s] to protect buyers from loss where the goods purchased are below commercial standards." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). The elements of a claim for breach of this warranty "are essentially the same" as those needed to prove strict liability, and both require evidence "that the product in question be defective at the time it leaves the hands of the seller." *Gumbs v. Int'l*

---

[3] It is far from clear that they do. Lowe's, a retailer, played no part in the design or manufacture of the Petka's dryer, so it is unclear why they would have any duty to the Petkas vis-à-vis those tasks. And Samsung represents that the specific corporate entity targeted by this suit—Samsung Electronics America, Inc.—is only responsible for marketing Samsung products in the United States, and that it was also not involved in the design or manufacture the Petka's dryer.

[4] The Complaint further alleges a breach of unspecified express warranties, but the Petkas' summary judgment briefing concedes that there is no evidence to support these claims.

10

*Harvester, Inc.*, 718 F.2d 88, 94 & n.10 (3d Cir. 1983). As discussed above, no evidence of such defect exists here, and the Petkas even agree that their claims "relate to an allegedly faulty installation, and not a faulty product." Accordingly, their claims for breach of implied warranty of merchantability fail.

The implied warranty of fitness for a particular purpose, meanwhile, only attaches when "the seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select of furnish suitable goods." 13 Pa. C.S. § 2315. "'[P]articular purpose' differs from the 'ordinary purpose' for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business." *Gall ex rel. Gall v. Allegheny Cnty. Health Dept.*, 555 A.2d 786, 790 (Pa. 1989). For example, "shoes are generally used for the purpose of walking upon ordinary ground," in which case the general warranty of merchantability attaches. *Id.* (quoting 13 Pa. C.S. § 2315 cmt. 2). It is only if the seller knows "that a particular pair was selected to be used for climbing mountains" that they may be liable under the warranty of fitness for a particular purpose. *Id.* Here, no evidence supports such a conclusion. The Petkas point to testimony that "the salesman had told us that this [dryer] is a good one. So, we took their advice," but this does not establish that they intended to use their dryer for anything beyond its "ordinary purpose," or that this salesman was aware of that fact. As a result, this claim too fails.

### D. Breach of Contract

The Petkas' final claim is for breach of contract. "Generally speaking, for a plaintiff to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002)

(citing *Corestates Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)). As to Samsung, no evidence establishes the first of these elements. The summary judgment record does not contain a copy of any contract between the Petkas and Samsung, nor is there any other evidence to prove the existence of a contract that was never reduced to writing. "The existence of a contract is the preeminent element of a breach of contract claim, without which Plaintiff's claim must fail." *Judge v. Shikellamy Sch. Dist.*, 135 F.Supp.3d 284, 297 (M.D. Pa. 2015).

As to Lowe's, there is evidence of at least one contract: the Petkas testified that they paid Lowe's for the purchase and installation of a new dryer, and "Pennsylvania recognizes and enforces oral contracts between parties." *Veritext/PA Reporting Co. v. E-Reporting Stenographic Affiliates of Pa., Inc.*, 2006 WL 3524375, at *2 (E.D. Pa. Dec. 5, 2006). But the only contractual term evinced by this testimony is an agreement to exchange money for goods and services. The Petkas do not contest that this took place—*i.e.*, that after taking their money, Lowe's in fact sold them the dryer and arranged for it to be installed. And nothing in the summary judgment record indicates otherwise. Thus, because no reasonable jury could conclude that Lowe's breached its contractual obligations to the Petkas, it is entitled to judgment as a matter of law on that claim.

An appropriate order follows.

                                                **BY THE COURT:**

                                                **/s/Wendy Beetlestone, J.**

                                                _____

                                                **WENDY BEETLESTONE, J.**